IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

| | |
|---|---|
| DON F. SALMINEN and SUSAN P. SALMINEN, | CV 11-57-M-DWM |
| Plaintiffs, | |
| vs. | ORDER |
| MORRISON & FRAMPTON, PLLP and JOHN DOES 1 through V, | |
| Defendants. | |

**I. Introduction**

This 42 U.S.C. § 1983 action comes before the Court upon Defendant Morrison & Frampton, PLLP's ("Morrison's") motion to dismiss. Morrison argues Plaintiffs' First Amended Complaint fails to allege it acted under color of state law, a requisite to state a claim under § 1983. For the reasons that follow, the Court agrees and the case is dismissed.

## II. Factual Allegations

In November 2009, the Flathead County district court entered a judgment in the amount of $482,499.00 in favor of Centennial and Leonard, and against the Plaintiffs in this action, Don and Susan Salminen (the "Salminens"). In December 2009, Morrison, on behalf of the judgment creditors, sought and obtained a writ of execution and garnishment. A levy was made that same month on the Salminens' bank accounts and wages. The Salminens then filed a notice of claimed exemptions and request for hearing, which they served on Morrison.

Soon thereafter, Morrison prepared an ex parte application for warrant of execution and affidavit that contained numerous falsities. The untruths included representations that the writ of execution was returned unsatisfied, there was no other property available for levy, none of the property was exempt from execution, and the application without notice to the Salminens was proper. After receiving the warrant, Morrison presented it to the Flathead County Sheriff's Office.

On March 9, 2010, attorney Joos, an associate attorney at Morrison, met Flathead County Sheriff Deputy Shawn Tyler at the Salminens' residence in order to levy an execution. The Salminens were not at home. Joos misrepresented to Deputy Tyler that they knew the seizure was happening and there was no way to contact them. Deputy Tyler gained entrance to the residence with the aid of a

locksmith. Joos then brought in a moving company, who removed all personal property from the residence. When family members learned of what was happening, Deputy Tyler informed them that a court ordered seizure was in progress. When the Salminens' son-in-law asked Deputy Tyler how they were supposed to live considering all of their clothes, food and medication was being seized, Deputy Tyler told him he had been instructed to levy the execution to take everything. The seized belongings were put into storage except for $5400.00 in cash that Joos took.

Towards the end of March 2010, the Salminens filed a renewed notice of claimed exemptions. At the hearing in April, Sean Frampton, another Morrison attorney, told the court that no money had been paid toward the judgment. In subsequent filings to the court, Morrison acknowledged the wages and bank account proceeds that had been levied in December 2010, as well as the $5400.00 seized from the Salminens' house. On July 13, 2010, the court ordered Morrison to return all of the seized property, finding it exempt under Mont. Code Ann. § 25-13-608 and § 25-13-609. The property was not returned until August 4, 2010.

In their Amended Complaint, the Salminens allege seven counts. Count I asserts Morrison deprived them of their property without due process of law, in violation of § 1983. Specifically, they allege their rights to privacy and due

process were infringed by Morrison securing an ex parte writ of execution allowing for the seizure of their property without notice and an opportunity to be heard. They allege Morrison acted jointly with the sheriff's department, which participated in the search and seizure by obtaining entry into the home, remaining on the scene throughout the seizure, and informing the family that the seizure was occurring pursuant to a court order.[1] The other counts all assert claims under state law: violation of the Montana Constitution (Count II), abuse of process (Count III), trespass (Count IV), conversion (Count V), wrongful levy (Count VI), and negligence (Count VII).

## III. Rule 12(b)(6) Standard

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) if, accepting all well-pled facts as true, the operative pleading fails to state a plausible claim upon which relief may be granted. Hebbe v. Pliler, 627 F.3d 338, 341-42 (9th Cir. 2010). The Ninth Circuit reviews de novo a dismissal under Rule 12(b)(6). Id. at 341.

---

[1] The Salminens have not challenged the constitutionality of Montana's laws governing the execution of judgments, or filed a Rule 5.1 notice suggesting their pleading should be read to implicitly make such a challenge. See Fed. R. Civ. P. 5.1 ("A party that files a pleading . . . drawing into question the constitutionality of a . . . state statute must promptly . . . file a notice of constitutional question stating the question and identifying the paper that raises it, if . . . a state statute is questioned and the parties do not include the state, one of its agencies, or one of its officers or employees in an official capacity . . . .").

## IV. Analysis

To state a claim under 42 U.S.C. § 1983, the Salminens must allege Morrison "(1) deprived them of a right secured by the Constitution, and (2) acted under color of state law." Collins v. Womancare, 878 F.2d 1145, 1147 (9th Cir. 1989). Contested here is whether the Salminens alleged facts showing Morrison acted "under color of state law."

A private party acts under color of state law when its conduct is "fairly attributable" to the state. Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 937 (1982). Private conduct is "fairly attributable" to the state when it involves (1) a state policy and (2) a state actor. Id. The state policy component requires "the deprivation [] be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible." Id. This component may be met either through a state statute, see id. at 940-41, or through a well-settled custom or practice, Adickes v. S. H. Kress & Kress & Co., 398 U.S. 144, 168 (1970). As for the state actor component, "the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State." Lugar, 457 U.S. at

937.[2]

The operative pleading alleges Morrison misled state authorities and violated state law in executing on a private money judgment. Morrison asserts such alleged conduct does not satisfy the "state policy" component of the Lugar test. In response, the Salminens insist their allegations of joint activity between Morrison and Deputy Tyler suffice to show Morrison's conduct is attributable to the state. Morrison has it right, and Deputy Tyler's alleged joint activity, contrary to the Salminens' insistence, is not enough to state a claim against Morrison under § 1983.

"State policy is not implicated when an injured party claims that a private party has violated a constitutional post-judgment procedural statute in the course of depriving the injured party of his property." Roudybush v. Zabel, 813 F.2d 173, 177 (8th Cir. 1987). In Lugar, a debtor brought two counts under § 1983. In one, he challenged the constitutionality of the state's pre-judgment attachment statute, which the creditor used to attach his property. In the other, the debtor alleged his property was attached through the creditor's misuse of the state statute. Lugar, 457 U.S. at 940-41. The Supreme Court ruled that the lawful use of an

---

[2]The two components of the test converge "when the claim of a constitutional deprivation is directed against a party whose official character is such as to lend the weight of the State to his decisions." Lugar, 457 U.S. at 937 (citing Monroe v. Pape, 365 U.S. 167, 172 (1961)).

allegedly unconstitutional statute satisfied the state policy component, but an alleged misuse of state law did not.  The Court explained that conduct alleged to be "unlawful under state law" could not "be ascribed to any governmental decision," meaning such conduct was contrary, not pursuant to, state policy.  Id. at 940.  Put another way, a creditor that "invoked [a] statute without the grounds to do so could in no way be attributed to a state rule or a state decision . . . and therefore [such alleged conduct] does not state a cause of action under § 1983 [because] it challenges only private action."  Id.

Yanaki v. Iomed, Inc., 415 F.3d 1204 (10th Cir. 2005), illustrates Lugar's impact.  In Yanaki, plaintiffs' home was searched pursuant to an enforcement order defendant obtained under state law.  The offending search was conducted by defendant while accompanied by a deputy sheriff to assist.  The search resulted in the seizure of plaintiffs' property.  Plaintiffs filed a § 1983 action alleging the search violated their rights to due process and to be free from unreasonable searches and seizures.  Plaintiffs did not challenge the constitutionality of the state laws authorizing the search and enforcement order, only that its issuance was unlawful.  The Tenth Circuit, looking to the guidance provided by Lugar, noted

> the "color of law" reference in § 1983 was [not] intended to encompass a case such as this one, where the only infirmities are the excesses of the court order itself, subject to immediate modification by a court having jurisdiction

over the parties, and subject to the normal processes of appeal.

Id. at 1208-09 (quoting Torres v. First State Bank of Sierra County, 588 F.2d 1322, 1325-27 (10th Cir.1978)). The Tenth Circuit thus found the alleged conduct not attributable to the state because the plaintiffs alleged "nothing more than 'private misuse' of state law." Id. at 1209.

The Salminens attempt to evade Lugar's reach by arguing the Ninth Circuit has carved out an exception. In Howerton v. Gabica, two landlords directly procured the assistance of a police officer–who was also their tenant–to assist them with an eviction of tenants. The police officer's assistance was more than a one-off event, and he was present at every step of the eviction. In addition, the officer actively intervened on behalf of his landlords by privately approaching the tenants about the eviction. The Ninth Circuit found such private use of the police to facilitate an illegal repossession qualified as conduct under color of state law. 708 F.2d 380, 384 (9th Cir. 1983). In doing so, Howerton distinguished itself from Lugar:

> In Lugar, the Court affirmed the dismissal of the portion of the plaintiff's section 1983 complaint that challenged "unlawful" use of state prejudgment attachment procedures, even though the procedures themselves required the involvement of the county clerk and the sheriff. The Court ruled that this portion of the complaint did not challenge state action, because the fact "[t]hat respondents invoked the [attachment] statute without grounds to do so could in no way be attributed to a state rule or decision." The present

case is distinguishable, because the [tenants] in this case allege that the [landlords] invoked the authority of specific state officials, the Kooskia police, to put the weight of the state behind their private decision to evict. The case therefore falls within the "abuse of authority" doctrine of <u>Adickes</u>, <u>Price</u>, and <u>Monroe v. Pape</u> that the Court explicitly recognized in <u>Lugar</u>.

<u>Id.</u> at 384 n.9 (citations omitted).

<u>Howerton</u> makes clear that a private party that directly recruits the police to serially assist in the illegal repossession of property may have acted under color of state law, but that case explicitly leaves <u>Lugar</u>'s holding intact: the private misuse of a state statute resulting in the police facilitating an attachment of property, without more, does not implicate state policy and thus cannot be attributed to the state. See also <u>Winterland Concessions Co. v. Trela</u>, 735 F.2d 257, 262 (7th Cir. 1984) ("[A] private misuse of a statute or procedure, as alleged here, does not describe conduct which is actionable under § 1983 . . . , despite the participation of state officers in effecting statutory processes."). At the same time, <u>Howerton</u> is similarly unhelpful to the Salminens because there is no allegation Deputy Tyler did not merely discharge his statutory duty, let alone that he conspired with Morrison to execute the judgment. Without so much, his alleged conduct does not state a § 1983 claim under the "abuse of authority" doctrine. See <u>Monroe v. Pape</u>,

365 U.S. 167 (1961).³

## V. Conclusion

Accordingly, IT IS HEREBY ORDERED that Defendant Morrison & Frampton, PLLP's Motion to Dismiss (dkt #9) is GRANTED, and Count I of the Salminen's Amended Complaint is dismissed for failure to state a claim upon which relief may be granted.

IT IS FURTHER ORDERED that the Court declines to exercise supplemental jurisdiction over the Salminens' remaining state law claims, see 28 U.S.C. § 1367(c)(3), and the action is therefore dismissed in full.

Dated this 27th day of July, 2011.

_____
DONALD W. MOLLOY, DISTRICT JUDGE
UNITED STATES DISTRICT COURT

---

³The Salminens also cite an unpublished Ninth Circuit decision where the court found a judgment creditor to be a state actor when he received a writ under state law that commanded the sheriff to seize the judgment debtor's property. Copelan v. Croasmun, 84 Fed. Appx. 762 (9th Cir 2003) (unpublished). In that terse decision, however, there is no mention that the judgment creditor's use of state law was improper. As such, reliance on the case to dispel the thrust of Lugar is misplaced.